**In the Matter of Rickey J. UPRIGHT a/k/a Rickey Upright d/b/a Flowers by Rickey, Debtor.**

**Bankruptcy No. 79 B 02283.**

United States Bankruptcy Court, N. D. New York.

Dec. 19, 1979.

695

Harp & Harp, New Paltz, N. Y., for debtor.

Seymour Feinman, Newburgh, N. Y., for Trustee.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The debtor's objection to the trustee's sale of certain property raises issues of jur-

isdiction, venue and whether or not the debtor's exemption under Code § 522(d)(5) applies to stock in trade.

On October 19, the debtor filed a voluntary petition for an order of relief under the Bankruptcy Reform Act of 1978 with the Bankruptcy Court in Poughkeepsie, New York in the Southern District of New York. The debtor was then a resident of New Paltz, Ulster County, in the Northern District of New York, where he operated a florist shop, doing business as "Flowers by Rickey".

The debtor elected in his petition the new Federal system of exemptions, pursuant to 11 U.S.C. § 522(b)(1), and claimed the exemptions prescribed under 11 U.S.C. § 522(d) to the extent of $6,437.45, the total amount of property scheduled in Schedule B–4. This figure included his inventory from his flower shop business, consisting of artificial flowers, pottery objects and floral supplies, valued at $5,582.45, and which were sold by the trustee at a public auction for $5,600.00.

The debtor chose to file his petition in the Bankruptcy Court in Poughkeepsie, in the Southern District of New York, because according to the Report of the Proceedings of the Judicial Conference of the United States, as recommended by the Committee on the Administration of the Bankruptcy System, the Conference authorized the following procedure effective April 1, 1979:

"1. Authorized the full-time referee (sic) at Poughkeepsie in the Southern District of New York to exercise concurrent jurisdiction with the referees (sic) of the Northern District of New York in the counties of Columbia, Greene, and Ulster."

Therefore, the debtor invoked the concurrent jurisdiction of the Bankruptcy Court in Poughkeepsie, in the Southern District of New York for debtors residing in Ulster County in the Northern District of New York. The debtor filed the petition directly with the Bankruptcy Court in Poughkeepsie, instead of filing the petition for relief with the Bankruptcy Court in the Northern District of New York, where the petition would then have been transmitted to the Bankruptcy Court in Poughkeepsie, for the convenience of residents of the counties of Columbia, Greene, and Ulster.

Unlike the Bankruptcy Court in the Northern District of New York, which is not a pilot district, the Bankruptcy Court in Poughkeepsie, located in the Southern District of New York, was designated in 28 U.S.C. § 581 as one of the pilot districts in which the Attorney General is directed to appoint a United States trustee to exercise the administrative powers described in Chapter 15 of the Bankruptcy Code [U.S.C. § 15101 et seq.]. Accordingly, when the debtor filed his petition for relief under Chapter 7 of the Bankruptcy Code with the Bankruptcy Court in Poughkeepsie, on October 19, 1979, such case commencement constituted an order for relief under such Chapter in accordance with 11 U.S.C. § 301, which provides in pertinent part as follows:

"The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter."

The United States trustee for the Southern District of New York, upon being apprised of the filing of the debtor's voluntary petition for relief with a Bankruptcy Court in the Southern District of New York immediately appointed an interim trustee on October 19, 1979, to serve in this case in accordance with the mandate of 11 U.S.C. § 15701 which provides:

"§ 15701. Interim trustee.

(a) Promptly after the order for relief under Chapter 7 of this title, the United States trustee shall appoint one disinterested person that (sic) is a member of the panel of private trustee (sic) established under Section 586(a)(1) of title 28 or that (sic) was serving as trustee in the case immediately before the order for relief under this Chapter to serve as interim trustee in the case."

The interim trustee selected by the United States trustee to serve in this case was a member of the panel of private trustees maintained by the United States trustee in accordance with 28 U.S.C. § 586(a)(1), which provides:

"§ 586. Duties; supervision by Attorney General.

(a) Each United States trustee, within his district, shall—

(1) establish, maintain, and supervise a panel of private trustees that (sic) are eligible and available to serve as trustees in cases under Chapter 7 of title 11;
. . . .".

The trustee promptly proceeded to exercise his fiduciary duty to liquidate and administer the estate under his stewardship. Unlike cases administered under the former Bankruptcy Act, where trustees must apply to the court for affirmative consent to sell estate assets, the present Bankruptcy Code has removed the Bankruptcy Court from exercising administrative functions. Thus, 11 U.S.C. § 363(b) authorizes the trustee to sell estate property other than in the ordinary course of business, without court approval, as follows:

"§ 363. Use, sale, or lease of property.

. . . . .

(b) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

The legislative history with respect to 11 U.S.C. § 363(b) indicates that this subsection permits the trustee to use, sell, or lease property of the estate other than in the ordinary course of business provided that the trustee gives notice of any such use, sale, or lease and provides an opportunity for objections and a hearing if there are any objections. *House Report No. 95–595,* 95th Cong., 1st Sess. (1977) 345; *Senate Report No. 95–989,* 95th Cong., 2d Sess. (1978) 55, U.S.Code Cong. & Admin.News 1978, p. 5787.

In compliance with his obligation to give notice of his sale of estate property other than in the ordinary course of business, the trustee issued the following notice to the debtor and the scheduled creditors, dated October 30, 1979:

"TO WHOM IT MAY CONCERN, AND ESPECIALLY THE CREDITORS OF THE ABOVE–NAMED DEBTOR:

You and each of you are hereby notified that, unless object (sic) is made on or before November 6, 1979, SEYMOUR FEINMAN, Trustee for the Estate of the Debtor in the above-entitled matter, will proceed to sell, other than in the ordinary course of business, on November 8, 1979, at 11:30 o'clock in the forenoon, at Bankruptcy Court, 32–34 Haight Avenue, Poughkeepsie, New York, the following property of the Debtor's estate: THE STOCK IN TRADE OF THE DEBTOR CONSISTING OF ARTIFICIAL FLOWERS, WREATHES AND POTTERY OBJECTS"

On October 31, 1979, the trustee filed his bond. In nonpilot districts 11 U.S.C. § 322(a) provides that the court fixes the amount of the trustee's bond and determines the sufficiency of the surety. In pilot districts, such as the Southern District of New York, the United States trustee performs this function pursuant to 11 U.S.C. § 15322(b). However, the trustee gave notice of his intended sale of the estate property before he qualified by filing his bond.

The debtor filed an objection to the trustee's sale, dated November 6, 1979, which stated as follows:

"THE DEBTOR, RICKEY J. UPRIGHT, objects to the sale of Debtor's property, as follows:

1. The property which the Trustee is attempting to sell is exempt and is not part of the Debtor's estate.

2. The property is claimed by the Debtor to be exempt property and, thus, is not subject to the Trustee's power of sale.

3. The Notice of Sale, dated October 30, 1979, for a sale dated November 8, 1979, is not timely and gives insufficient notice."

Despite the debtor's formal objection, the debtor nevertheless failed to request a court hearing as to the propriety of the trustee's sale. Thus, the Bankruptcy Court clerk in Poughkeepsie did not schedule the objection for a hearing by the court. That no hearing was held was consistent with the rule of construction expressed in Code § 102 as follows:

"(1) 'after notice and a hearing', or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

(i) such a hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act;"

Thus, since no party in interest requested a hearing before the trustee's sale, the sale proceeded without court action, as authorized under Code § 102(1)(B). This point was made clear in the legislative history with respect to § 102 as follows:

". . . this means that if appropriate notice is given and no party to whom such notice is sent timely requests a hearing, then the act sought to be taken may be taken without an actual hearing." 124 Cong.Rec. H 11,090 (Sept. 28, 1978); S 17,407 (Oct. 6, 1978).

On November 8, 1979, the trustee auctioned off the debtor's inventory at a public sale held in the Bankruptcy Court in Poughkeepsie, New York to a third party who was the highest bidder in the amount of $5,600.00. The trustee gave up possession of the inventory to the third party bidder and continues to hold the sale proceeds of $5,600.00.

Pursuant to a letter dated November 9, 1979, the trustee filed with the Bankruptcy Court in Poughkeepsie, New York an "Opposition to Exemptions Claimed by Debtor", dated November 8, 1979, which stated as follows:

"TO: RICKEY J. UPRIGHT, DEBTOR and/or WENDELL D. HARP, ESQ. PLEASE TAKE NOTICE that the undersigned, Trustee herein, makes objection and disallows inventory claimed as exempt pursuant to the schedules heretofore filed by the debtor herein."

By order to show cause returnable December 13, 1979, the trustee sought an order from this court "determining that the property sold by the Trustee on November 8, 1979, is not exempt property as contemplated by the Bankruptcy Code, and that the monies realized from said sale be part of the debtor's estate."

## JURISDICTION

■ The debtor disputes the trustee's authority to sell the property in question in the face of the debtor's claimed exemption. The debtor argues that the trustee's notice of sale was issued one day before he qualified and therefore, the trustee lacked jurisdiction to sell the debtor's inventory.

The court is not impressed with this argument. The trustee was appointed on October 19, 1979. Code § 322(a) provides that a person selected to serve as a trustee—

"qualifies if before five days after such selection, and before beginning official duties, such person has filed with the court a bond in favor of the United States conditioned on the faithful performance of such official duties."

The trustee filed his bond on October 31, 1979, twelve days after his appointment. Such tardy filing did not per se render the October 30th notice ineffective. The acts and conduct of the trustee before the filing of his bond were performed in his capacity as de facto trustee and could be enforced by him after his qualification. The de facto trustee was then charged with all of the official duties of his position and was entitled to enforce all of the rights of a trustee upon qualification. This point was expressed in *In re Martinez*, 355 F.Supp. 650, 654 [D.C. Puerto Rico 1972] as follows:

"[E]ven though a trustee has not given bond within the term stated in Section 50(b) of the Act . . . the trustee's acts are valid as having been carried out as a de facto trustee. The right of the trustee to act as such and to officially perform (sic) his duties can only be ended by a judicial declaration of vacancy."

Similarly, in *Sharfsin v. U. S.,* 265 F. 916 [4 Cir. 1920] the court sustained the de facto authority of a trustee before filing his bond and qualified. Accordingly, the jurisdictional argument bottomed on the trustee's notice of sale one day before his qualification is not well-founded.

Lurking behind the debtor's jurisdictional objection however, is the disturbing fact that the trustee was appointed by the United States trustee from his panel of private trustees for a case that should have been filed with the Bankruptcy Court in the Northern District of New York, which is a nonpilot district, and then referred for convenience sake to the Bankruptcy Court in Poughkeepsie, New York, which is a pilot district. Had the debtor filed the case in the Northern District, the Bankruptcy Court in Poughkeepsie, in the exercise of its concurrent jurisdiction with the Northern District of New York, would have appointed a trustee from the panel of trustees maintained for the nonpilot Northern District of New York. Instead, the Clerk in the Bankruptcy Court in Poughkeepsie referred the case to the United States trustee for the Southern District of New York immediately after the filing of the petition in the Bankruptcy Court in Poughkeepsie.

Initially, it should be observed that the issue is not one of jurisdiction, but relates instead to a matter of venue. There is no question that the Bankruptcy Court for the Northern District of New York has appropriate jurisdiction of this case pursuant to 28 U.S.C. § 1471(a)(c) and (e) which provide as follows:

"(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

.    .    .    .    .

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

.    .    .    .    .

(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case."

In light of the grant of concurrent jurisdiction to the Bankruptcy Court in Poughkeepsie by the Judicial Conference of the United States, with respect to Northern District cases for the counties of Columbia, Greene, and Ulster, the Bankruptcy Court in Poughkeepsie has concurrent jurisdiction of this case with the Bankruptcy Court in the Northern District, including jurisdiction over all of the debtor's property, wherever located.

Had the debtor filed his petition for relief as a Southern District of New York case, the issue would not have been lack of jurisdiction, but rather one of venue. The appropriate venue for this debtor, who resides and maintained his principal place of business in Ulster County in the Northern District of New York, is the Bankruptcy Court for the Northern District of New York, as expressed in 28 U.S.C. § 1472(1) as follows:

"§ 1472. Venue of cases under title 11. Except as provided in section 1474 of this title, a case under title 11 may be commenced in the bankruptcy court for a district—

(1) in which the domicile, residence, principal place of business, in the United States, or principal assets, in the United States, of the person or entity that is the subject of such case have been located for the 180 days immediately preceding such commencement, or for a longer portion of such 180-day · period that the domicile, residence, principal place of business, in the United States, or principle assets, in the United States, of such person were located in any other district;"

Upon being confronted with a Southern District of New York case which should have been commenced in the Northern District of New York, this court would either have retained the case.or transferred it to the Northern District of New York, but would not have dismissed it for lack of

jurisdiction. The procedure for such retention or transfer is prescribed in 28 U.S.C. § 1477 as follows:

"§ 1477. Cure or waiver of defects. (a) The bankruptcy court of a district in which is filed a case or proceeding laying venue in the wrong division or district may, in the interest of justice and for the convenience of the parties, retain such case or proceeding, or may transfer, under section 1475 of this title, such case or proceeding to any other district or division.

(b) Nothing in this chapter shall impair the jurisdiction of a bankruptcy court of any matter involving a party who does not interpose timely and sufficient objection to the venue."

■ Thus, having filed his petition for relief with the Bankruptcy Court in Poughkeepsie, New York, in the Southern District of New York, rather than with the Bankruptcy Court for the Northern District of New York, the debtor cannot complain on jurisdictional grounds that the interim trustee in this case was appointed, pursuant to procedures prescribed for pilot district cases under the aegis of the United States trustee, in a Bankruptcy Court located in a district of improper venue. The designated trustee serves in accordance with appropriate jurisdictional authority.

## DOES THIS COURT HAVE JURISDICTION?

The debtor next asserts that the Bankruptcy Judge in the Bankruptcy Court in Westchester County, in the Southern District of New York does not have jurisdiction to entertain the trustee's application because the Bankruptcy Court in Westchester County is not the proper venue for this proceeding. This point is predicated on the fact that the Bankruptcy Judge for the Bankruptcy Court in Poughkeepsie, New York retired effective August 31, 1979. By direction of the Chief Judge for the United States District Court for the Southern District of New York, the Bankruptcy Judge in the Bankruptcy Court for cases in Westchester and Rockland Counties was as-

signed to preside in the Bankruptcy Court in Poughkeepsie until a Bankruptcy Judge for Poughkeepsie was appointed and took office.

During the period when this court presided at meetings of creditors under the former Bankruptcy Act, such hearings were held in the Bankruptcy Court in Poughkeepsie. However, pursuant to Code § 341(c):

"The court may not preside at, and may not attend, any meeting under this section."

Therefore, all matters other than Code § 341 meetings of creditors, which continue to be held in the Bankruptcy Court in Poughkeepsie under the aegis of the United States trustee, are made returnable in the Bankruptcy Court in Westchester County. However, as to those cases arising out of the Bankruptcy Court in Poughkeepsie, this court presides as Bankruptcy Judge exercising the authority of the Bankruptcy Judge assigned to the Bankruptcy Court in Poughkeepsie.

The authority for this procedure is expressed in Title IV of the Bankruptcy Reform Act of 1978, applicable to the transition period under the new legislation for the period from October 1, 1979 to April 1, 1984. Section 404(d) in Title IV provides as follows:

"(d) Except as otherwise provided in this section or in section 407 of this Act, matters relating to the office of United States bankruptcy judges and to United States bankruptcy judges shall continue to be governed during the transition period by the rules set forth in sections 34, 35, 36, 40a, 40b, 40d, 41, and 43 of the Bankruptcy Act as such Act existed on September 30, 1979. A Court of bankruptcy may not appoint an individual under such section 34 if the merit screening committee established under subsection (c) of this section for the district of such court finds such individual to be not qualified."

■ Section 43(c) of the former Bankruptcy Act, which was incorporated by reference in § 404(d) in Title IV of the Bank-

ruptcy Reform Act of 1978, contains the following language:

> "c. Whenever the office of a referee is vacant . . . or whenever the expeditious transaction of the business of the court or courts of bankruptcy may require, . . . the chief judge of the district may designate and assign temporarily any referee of the district to act . . . .".

Having been assigned to preside over cases from the Bankruptcy Court in Poughkeepsie, New York, this court has jurisdiction to entertain the trustee's application with respect to a case that the debtor commenced in the Bankruptcy Court in Poughkeepsie, New York in the Southern District of New York, notwithstanding that the application was made returnable in the Courthouse in White Plains, Westchester County, Southern District of New York. As the Bankruptcy Judge presiding over cases from the Bankruptcy Court in Poughkeepsie, New York, this court will exercise concurrent jurisdiction for those cases with the Bankruptcy Judges of the Northern District of New York, in accordance with the authorization of the Judicial Conference of the United States, which became effective April 1, 1979.

### EXEMPTION CLAIMED

Having surmounted the debtor's jurisdictional hurdles, the court will next address the substantive argument posed by the exemptions claimed by the debtor in his schedules with respect to the inventory from his florist business.

█ The trustee disputes the debtor's right to claim an exemption for inventory in the amount of $5,582.45. Since the debtor does not own any real property, he claimed the $400 exemption under Code § 522(d)(5), plus the unused $7500 Homestead Exemption under Code § 522(d)(1), for a maximum allowable exemption of $7900, but limited to the inventory valued at $5,582.45.

Code § 522(d)(5) permits the debtor to exempt:

> "(5) The debtor's aggregate interest, not to exceed in value $400 plus any unused amount of the exemption provided under paragraph (1) of this subsection, *in any property.*" [Emphasis added]

Paragraph (1) of subsection (d) allows the following exemption:

> "(1) The debtor's aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor."

The issue presented is whether or not the phrase "in any property", as used in Code § 522(d)(5) may include business inventory, so that the unused $7,500 homestead exemption under Code § 522(d)(1) plus the $400 exemption under Code § 522(d)(5), combine to create a maximum allowable exemption of $7,900 for inventory used by the debtor in his business as an individual proprietor?

The trustee contends that the unused portion of the homestead exemption plus the $400 may be claimed as an exemption only in property that is exempt by a specific paragraph of Code § 522(d) and not in property that is otherwise nonexempt. Thus, other than the $750 exemption under Code § 522(d)(6) for tools of the trade, there is no exemption for business-related items, such as inventory under subsection (d). All of the other items are of a personal, family or household nature.

█ The trustee's position fails to take account of the fact that the Federal exemption scheme reflects a Federal interest in seeing that a debtor who petitions the Bankruptcy Court for relief comes out with adequate possessions to begin a fresh start. The exemptions made available under subsection (d) enunciate a bankruptcy policy favoring this fresh start. Therefore, where the words are clear and unequivocal the courts should not engraft limitations unexpressed by Congress.

The alternative to the homestead exemption was a Congressional recognition that many debtors do not acquire homes or have a small equity. Hence, the $400 figure, plus the spill-over from the unused amount of the homestead exemption "in any property" is a reflection of a Congressional intention not to discriminate against the nonhomeowner, or the homeowner with little or no equity. See *House Report No. 95–595,* 95th Cong., 1st Sess. (1977) 361, U.S.Code Cong. & Admin.News 1978, p. 5787. It was intended that the nonhomeowner could use the $7500 homestead exemption for any other property. No limitation was expressed with respect to the character of the property eligible for the subsection (d)(5) spill-over exemption. On the contrary, the phrase "any property" means just that; the property need not be of the kind otherwise exempt under the various provisions in subsection (d).

The debtor was therefore correct in claiming an exemption in the sum of $5,582.45. Indeed, his valuation was nearly perfect, since the trustee realized $5,600.00 at the auction.

### MAY THE TRUSTEE SELL EXEMPT PROPERTY?

■ Pursuant to Code § 541, all property of the debtor becomes property of the estate upon the filing of a petition for relief; even property needed for a fresh start, thereby overruling *Lockwood v. Exchange Bank,* 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903) and *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). After the property comes into the estate, Code § 522(b) provides that notwithstanding § 541, an individual debtor may exempt certain property from the estate. The Bankruptcy Court would then have to determine what property may be exempted and what remains as property of the estate. *House Report No. 95–595,* 95th Cong., 1st Sess. (1977) 368, U.S.Code Cong. & Admin. News 1978, p. 5787.

Since the Code is silent as to the procedure for the debtor's claim of exemption, reference may be had to Bankruptcy Rule 403 which is not inconsistent with the substantive provisions in Code § 522. Rule 403(b) directs that the trustee file a report with the court as to the claimed exemptions within fifteen days after the trustee qualifies. Rule 403(c) provides that any creditor or the bankrupt (now debtor) may file objections to the report within fifteen days after its filing. Additionally Code § 522(*l*) states that unless a party in interest objects, the property claimed as exempt on the debtor's list is exempt.

■ The trustee filed his objections to the debtor's claim of exemptions with the Bankruptcy Court in Poughkeepsie, New York by letter dated November 9, 1979, which was the day after his sale of the debtor's stock in trade on November 8, 1979. Thus, when the trustee sold the property the debtor's claim of exemptions was uncontested. By selling the debtor's inventory, despite his claim of exemptions as set forth in his petition for relief, the trustee deprived the debtor of an opportunity to contest the trustee's belated postsale objection to the debtor's exemptions, and from reclaiming possession of the property.

Fortunately the debtor's claim of exemption for the inventory in the sum of $5,582.45 is less than the $5,600.00 that the trustee realized from the sale.

The trustee is therefore directed to turn over to the debtor the sum of $5,582.45, representing the amount claimed by the debtor with respect to the exempt inventory. The trustee is also directed to return to the debtor $655.00 consisting of the cash on hand in the sum of $205 and the $400 in the debtor's checking account when the petition for relief was filed, for a total of $6,237.45. The remaining $200, which comprises the debtor's total exemption claim of $6,437.45, consists of wearing apparel retained by the debtor.

The trustee's application for an order determining the property sold at the auction on November 8, 1979 as nonexempt is denied.

IT IS SO ORDERED.