Benjamin W. Morse *vs.* Fall River Line Pier, Inc.

Bristol.    February 5, 1963. — April 2, 1963.

Present: Wilkins, C.J., Spalding, Whittemore, Kirk, & Reardon, JJ.

*Corporation,* Officers and agents.    *Contract,* What constitutes, Contract of employment.    *Practice, Civil,* Charge to jury, Requests, rulings and instructions.    *Error,* Whether error harmful.    *Evidence,* Relevancy and materiality.

A renewal contract of employment between a corporation and its manager was not invalid in that the contract was voted in behalf of the corporation by persons purporting to be directors who had not been properly elected as such and so voted at a meeting of which a required notice was neither given nor waived, where it did not appear that the manager, who was not an officer of the corporation, knew of such irregularities. [682–684]

Failure to execute a written contract as contemplated by a vote of the directors of a corporation to renew for three years, on certain terms, a contract of employment with the manager of the corporation did not show that no contract was made where it could be inferred that the manager was informed of the vote shortly after its adoption and it appeared that he continued to work for two years thereafter. [684–685]

Failure of the judge at the trial of an action to instruct the jury on a principal point in the case did not constitute reversible error where no

request for such an instruction was made either before or after the charge.   [685–686]

There was no error at the trial of an action in a refusal of the judge to instruct the jury in the terms of a request for instructions where he adequately covered the subject matter of the request in his charge.   [686–687]

No prejudice to the defendant at the trial of an action was shown in the exclusion of a question asked a witness for the plaintiff on cross-examination where it did not appear that testimony elicited in answer to the question would have been more adverse to the plaintiff than evidence on the same subject matter already introduced.   [687]

At the trial of an action for breach of a contract of employment through discharge of the plaintiff during its term, it was within the judge's discretion to allow the plaintiff to testify that he was "ready, able and willing to complete his part of the agreement."   [687]

CONTRACT.   Writ in the Superior Court dated May 9, 1959.

The action was tried before *Taveira, J.*

*John F. O'Donoghue* for the defendant.

*William A. Torphy,* for the plaintiff, submitted a brief.

WHITTEMORE, J.   These are the defendant's exceptions in an action of contract in which the plaintiff had a verdict for breach of a contract for his employment as pier manager for three years from March 1, 1957.

1.   The defendant's motion for a directed verdict was rightly denied.

The defendant relies on the absence of any action by directors valid to impose an obligation upon the corporation.   The evidence shows at best a de facto board.   The directors who acted to make the contract should have been elected by the members (an ex officio board of ten Fall River officials) but were elected by the directors.   When the corporation was founded in 1946 sixteen directors were chosen, although fifteen was the largest number permitted by the by-laws, and succeeding boards stemmed from that over-sized board.   "At the January 16, 1957, meeting [at which the contract was voted] nine people were listed as present, six of whom were . . . [members] . . . [and] all nine acted as directors.   Listed as absent were ten persons, some of whom were . . . [members], all of whom purported to be

directors.'' Further, the required three day written notice to all directors was not given for that meeting and the alternative provision for waivers was not fully met.

''Where persons having color of title are permitted by the corporation to act in the position and with the reputation of being directors, third persons who deal with them in ignorance of their want of legal right to the offices are entitled to assume that there is no defect in their appointment.'' *Stratton Mass. Gold Mines Co.* v. *Davis,* 222 Mass. 549, 553. *Lazenby* v. *Henderson,* 241 Mass. 177, 180. *Tufts* v. *Waltham Auto Bus Co.* 273 Mass. 390, 395–396. The grounds are ''public policy and practical necessity.'' *Stratton* case, p. 553. The defendant contends that the plaintiff knew or should have known ''that the persons pretending to be officers . . . [were] not officers de jure.'' *Ibid.,* 554 (issue between corporation and stockholders). *Sears* v. *Corr Mfg. Co.* 242 Mass. 395, 399–400 (the plaintiff, long a director, charged with knowledge of the limits of the treasurer's authority). See *Richards* v. *Attleborough Natl. Bank,* 148 Mass. 187, 195. But the evidence does not require this conclusion. The defendant cites cases holding that paid officers, as well as directors, are bound to know of internal affairs and by-laws. The plaintiff, however, was not an officer. The by-laws provide for a pier manager in ''the event that the corporation shall become lessee of the pier proposed to be constructed by the Commonwealth'' and that ''the conduct of the business of the corporation upon and in connection with said pier'' be in his charge, and that he be appointed by the directors with ''such powers as the directors may delegate to him. The terms of employment of the Pier Manager shall be *three* years, at a salary not exceeding $       per annum. He shall have full charge, when the power is given to him by the Board of Directors, of the management and operation of the pier and he may employ and discharge necessary laborers, clerical help and other employees or assistants from time to time, subject to approval of the Board of Directors as to the number and classification of such employees and the wages or salaries which they

shall be paid. The Pier Manager shall be directly respon-
sible to the Board of Directors and shall render such re-
ports and accounts to the Board as the Board may from
time to time direct.''

True, the plaintiff was a key employee, but as pier mana-
ger he was unconcerned with the election of directors or
with notice or conduct of meetings. There is no evidence
that he knew of the defects now relied on. It is inconse-
quential that, although absent when his contract was voted,
he was present on January 16, 1957, when the directors were
elected. There is no basis for inferring that the directors
then spoke of their lack of authority or of the defect in
respect of notice.

The law is not, as the defendant contends, that de facto
authority cannot arise where ''the election or tenure is . . .
void.'' In *Clark* v. *Easton,* 146 Mass. 43, the town, although
it had not accepted the act permitting it to do so, purported
to elect road commissioners. It was held that they were
officers de facto inasmuch as there was an office created by
the Legislature which the town had purported to fill and in
which the persons elected purported to act. Here there
were directorships in which the apparent directors pur-
ported to act. That the members of the corporation were
at least acquiescing in the irregular conduct of the business
of their corporation can be inferred from the evidence which
showed that in 1957 over six of them were acting as direc-
tors and that six attended the January 16, 1957, meeting.

There is nothing in the point that no contract was made
because the written contract contemplated by the vote of
January 16, 1957, was never executed. The minutes of the
meeting recite as follows: ''Pier Manager Morse and his
assistant . . . were temporarily excused from the meeting.
The forthcoming expiration of the Pier Manager's contract
was discussed at length by the board. Upon a motion . . .
it was voted to renew the contract for the same salary per
year, $12,000. under the same conditions, for a three-year
period, beginning March 1, 1957, or for such period that
Fall River Line Pier, Inc. holds a lease on the property,

Morse *v.* Fall River Line Pier, Inc.

whichever is shorter. And it shall provide for a three-month cancellation clause for cause.'' The plaintiff had had a written contract for one year from March 1, 1955. On February 8, 1956, at a meeting purporting to be a directors' meeting, it was voted that the contract be renewed for one year ''as presently in effect.'' There is no basis for the assertion in the defendant's brief that ''the mere vote of the board [was] not communicated to the plaintiff, nor acted upon by him.'' The jury could have inferred that upon the plaintiff's return to the meeting, or promptly thereafter, he was informed of the vote. He continued at work for two years. Plainly an offer and an acceptance could be found even though no new contract was executed.

2. The judge did not err in failing to rule that damages were confined to salary for three months.

On January 19, 1959, a duly constituted board appointed a committee consisting of the president and an attorney with authority to give a termination notice to the plaintiff if it found that the corporation was not ''legally bound to employ Mr. Morse.'' At a meeting held on February 2, 1959, a letter was read from the attorney which noted his opinion that the corporation was not bound. The president added that ''his reasons why the plaintiff could not continue . . . were: 1. Lack of Mr. Morse's attracting pier business. 2. The fact that the corporation cannot afford his salary. A motion duly made . . . was passed by unanimous vote that a committee be appointed by the President to work out details of a new contract on an incentive basis for the plaintiff. The letter of . . . (the attorney) was read . . . and . . . [it] stated (in part) that the contract . . . was in violation of . . . (the Statute of Frauds).''[1] Under date of February 15, 1959, the plaintiff received a notice signed for the defendant by its president which stated: ''You are hereby advised that, in accordance with a vote of the board of directors, your services are terminated as of the date of this letter.'' There was no vote authorizing this action other than the vote of January 19, 1959.

---

[1] The defendant does not now so contend.

There was testimony that from 1954 to the first part of 1959 only two commercial ships used the pier for a total of one week and two days. The committee "considered this, and this was one of the reasons that prompted their decision to send the letter of discharge . . . . The other reasons . . . [were] that the Board had authorized it; also because of . . . [the attorney's] opinion that there was no legal contract . . . ."

There was also testimony of a contract between the defendant and the Commonwealth dated May 17, 1948, which "was in effect between March 1, 1957 and March 1, 1960 . . .; also [of] a lease between the defendant and the United States Navy signed May 6, 1959, for a ten-year period to yield $68,000 per year."

It is not clear that the jury could have found that there was termination for cause with consequent limitation of damages to the period specified in the contract. See Williston, Contracts (Rev. ed.) § 1359. The short answer, however, is that the defendant presented no request, either before or after the charge, to instruct that in such event the damages should be limited to the three months' notice period. Even if the case was so tried that such issue was one of "the leading points of the case," so that a prior request was not required, a request after the charge was necessary to give any ground for exception. *Brick* v. *Bosworth,* 162 Mass. 334, 337–338. *Commonwealth* v. *Enwright,* 259 Mass. 152, 158–159. *Gibbons* v. *Davis,* 324 Mass. 286, 288, and cases cited.

3. It was not error to refuse to instruct, in terms, that "[d]irectors . . . may remove . . . at any time for cause." The judge instructed that the defendant contended that there was "justifiable cause" and that the jury must find if there was such from all the evidence and exhibits.

Requests to instruct in respect of the plaintiff's presumptive knowledge from his position and his presence at the meeting on January 16, 1957, could not have been given for reasons hereinbefore stated. The instructions as to de facto officers adequately covered the issue that "[d]irec-

tors elected . . . other than as prescribed . . . are not legally elected.''

4.   There was no error in the admission of excerpts of the minutes of meetings of ''the supposed board of directors.''   It was not necessary to show that ''these minutes were of meetings duly called by a legal board.''

No prejudice is shown from the exclusion of the following question addressed to a witness who was assistant pier manager during the plaintiff's employment: ''During the course of that time (April 1, 1955 to approximately June 1959), did Mr. Morse . . . bring any commercial business to the pier, with the exception of the Naval lease?''   We assume that no offer of proof was required, this being cross-examination, but there was other evidence as to the limited use of the pier and there is no basis for assuming that any testimony more adverse to the plaintiff would have been elicited than that on which the defendant's president, as he said, acted in purporting to terminate the contract.

It was within the judge's discretion to allow the plaintiff to testify that he was ''ready, able and willing to complete his part of the agreement.''   The plaintiff was at work in his contract job when the notice of termination was given and, apart from this testimony, the jury could not infer that he had defaulted or was about to do so.

*Exceptions overruled.*