In re Vernard M. GRANDERSON d/b/a Almeida Rest Home, Debtor.

Vernard M. Granderson, d/b/a Almeida Rest Home, and Lillian V. Granderson, Appellants,

v.

M. Ellen Carpenter, Chapter 7 Trustee, for the Estate of Vernard M. Granderson, Appellee.

No. MB 99–038.

United States Bankruptcy Appellate Panel of the First Circuit.

Aug. 16, 2000.

Jack E. Robinson, Carpenter & Robinson, Alexander L. Cataldo, for the appellants.

M. Ellen Carpenter, Roach & Carpenter, PC, for the appellees.

Before VOTOLATO, LAMOUTTE, VAUGHN, U.S. Bankruptcy Judges.

VOTOLATO, Chief Judge.

The Debtor, Vernard Granderson, and his non-debtor spouse, Lillian Granderson (hereinafter "Appellants"/"Granderson"), appeal two rulings of the Bankruptcy Court for the District of Massachusetts, which: (1) denied Grandersons' Joint Motion for Removal of the Trustee; and (2) overruled their Objection to Boston Bank of Commerce's Motion to File an Objection to the Joint Motion for Removal Out of Time. Upon consideration of the arguments and for the reasons set forth below, the orders of the bankruptcy court are AFFIRMED.

## BACKGROUND

On September 1, 1995, Granderson, d/b/a Almeida Rest Home, filed a Chapter 11 petition for reorganization. After eighteen months of operation as a debtor in possession and following a hearing on February 27, 1997, the bankruptcy court ordered the appointment of a Chapter 11 Trustee. M. Ellen Carpenter, Esq., was appointed that same day as Trustee, and on Monday, March 3, 1997, four days after her appointment, Carpenter requested and was issued a bond in the amount of $300,000 by Arthur B. Levine Co. ("Levine"). However, Levine mistakenly sent Carpenter an "operating" bond rather than a "liquidating" bond.[1] The next day, March 4, 1997, Carpenter sent a letter to Levine requesting the proper "liquidating" bond. Carpenter received the bond on Friday, March 7, 1997, and immediately forwarded it to Paula Bachtell at the Office of the United States Trustee in Boston. On Monday, March 10, 1997, eleven days after her appointment, Carpenter filed the correct surety bond with the bankruptcy court, and assumed the duties of Chapter 11 trustee.[2]

On July 10, 1997, four months after her appointment as Trustee, Carpenter com-

---

1. A liquidating bond was required because the Debtor's business had already been sold.

2. Pursuant to 11 U.S.C. § 322(a), Carpenter was required to file a bond with the bankruptcy court within five days of her appointment.

menced an adversary proceeding against the Debtor and his wife Lillian, to set aside and recover an alleged fraudulent transfer of real property from the Debtor to his wife. The Grandersons filed motions to dismiss as well as motions for summary judgment. All four motions were denied by the bankruptcy court.

In January 1998, with the fraudulent conveyance action pending, Carpenter filed a motion to convert the case to Chapter 7. Without objection, the motion was granted, and on February 3, 1998, the United States Trustee appointed Carpenter as the Chapter 7 Trustee.[3]

On February 19, 1998, the Grandersons filed their first Motion to Remove the Chapter 7 Trustee, for "cause", pursuant to § 324(a) of the Bankruptcy Code,[4] arguing that Carpenter incurred fees and expenses as both Chapter 11 Trustee and counsel to the Chapter 11 Trustee, thereby making her not "disinterested." The same day, the Grandersons filed a Motion to Dismiss the Fraudulent Conveyance Adversary Proceeding, claiming that after the conversion of the case to Chapter 7 there was no party in interest to prosecute the matter. On March 17, 1998, both motions were (correctly, in our view) denied by the bankruptcy court.

On August 10, 1998, Carpenter commenced a second adversary proceeding seeking to deny Granderson a discharge, pursuant to 11 U.S.C. §§ 727(a)(2)(B), (a)(3), and (a)(6); as well as the recovery of $19,800 allegedly improperly withdrawn from the Granderson DIP account during the unsupervised Chapter 11. On March 1, 1999, Granderson filed a motion for partial summary judgment, on the ground that the withdrawals from the DIP account were made "in the ordinary course of business." On March 23, 1999, after hearing, the bankruptcy court, again correctly, denied the motion.

### The Joint Motion To Remove the Trustee:

Two years after her appointment, on March 29, 1999, the Grandersons filed a Joint Motion to Remove Carpenter ("Joint Motion"), on the ground that the order authorizing her appointment as Chapter 11 Trustee was void *ab initio*, because she failed to file her bond within five days of being selected, as required by 11 U.S.C. § 322(a).[5] The Grandersons also argued that both adversary proceedings should be dismissed because Carpenter had no authority to file them. On April 5, 1999, the bankruptcy judge heard oral arguments on the motion and took the matter under advisement.

On April 21, 1999, Boston Bank of Commerce ("the Bank") filed a Motion to File a Late Opposition to the Joint Motion,[6] arguing that it would be prejudiced by dismissal of the adversary proceedings, since the statute of limitations had expired on any causes of action involving the dischargeability of debts and the alleged fraudulent conveyance to Granderson's wife. By endorsement order on the same date, the bankruptcy court allowed the Bank's late opposition. On April 27, 1999, the Grandersons objected to the Bank's tardy opposition, arguing that the Bank failed to state any valid reason why the objection was filed late.

---

3. Carpenter has a valid standing/blanket bond covering the performance of her duties as a Chapter 7 Trustee.

4. This section states that: "The court, after notice and a hearing, may remove a trustee, other than the United States Trustee, or an examiner for cause." 11 U.S.C. § 324(a).

5. Except as provided in subsection (b)(1), a person selected under section 701, 702, 703, 1104, 1163, 1202, or 1302 of this title to serve as trustee in a case under this title qualifies if before five days after such selection, and before beginning official duties, such person has filed with the court a bond in favor of the United States conditioned on the faithful performance of such official duties.

11 U.S.C. § 322(a).

6. The deadline to file a motion opposing the removal of the Trustee was April 12, 1999.

On April 30, 1999, the bankruptcy court issued an order denying the Joint Motion, stating:

> The Court finds that the remedy sought by the Debtor and his spouse is wholly unsupported in law and in equity, particularly as the Debtor has not been harmed in any way by the technical failure to comply with the five day requirement for obtaining a bond set forth in § 322, that the arguments made by the Debtor and his spouse border on frivolous, and that the analysis of the law and arguments made by the Chapter 7 Trustee and the U.S. Trustee in their pleadings are persuasive and compel the denial of the Joint Motion. The Court also finds that the removal of the Trustee would prejudice creditors while providing a windfall to the Debtor and his spouse in the form of dismissal of the pending adversary proceedings. Accordingly the Court hereby denies the Joint Motion.

Order dated April 30, 1999. On May 4, 1999, by endorsement order, the bankruptcy court overruled the Grandersons' Objection to the Bank's motion to file a late opposition.

On May 10, 1999, the Grandersons filed a timely Joint Notice of Appeal of the bankruptcy court's orders of: (1) April 30, 1999, denying their Joint Motion to Remove the Trustee; and (2) May 4, 1999, overruling their Objection to the Bank's Motion to File a Late Opposition.[7] On August 30, 1999, Carpenter filed a motion to dismiss both appeals as interlocutory, and on October 14, 1999, the Panel heard oral argument on both the Trustee's Motion to Dismiss and on the merits of the Grandersons' appeal.

### DISCUSSION

I. *Jurisdiction:*

■ The Panel has jurisdiction to hear this appeal, as the order denying the Joint Motion to remove Trustee is a final order. *See In re Plaza de Diego Shopping Center, Inc.,* 911 F.2d 820, 826 (1st Cir.1990) (finding that an order appointing a trustee is immediately appealable). *See also In re Homer Arth Well No. 1,* 529 F.2d 1272 (6th Cir.1976) (district court order vacating appointment of trustee and substituting a different trustee is immediately appealable).[8]

While the order overruling the Debtor's Objection to the Bank's motion to file a late opposition to the Joint Motion might well be interlocutory, we will grant review of the order in the interest of judicial economy and because it is so intertwined with the Joint Motion that it is best to deal with these related matters together.

II. *Standard of Review:*

■ A bankruptcy court's findings of fact are reviewed under the "clearly erroneous" standard, while its conclusions of law are reviewed de novo. *See Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.),* 132 F.3d 104, 107–108 (1st Cir.1997); *Grella v. Salem Five Cent Sav. Bank,* 42 F.3d 26, 30 (1st Cir. 1994); *In re SPM Mfg. Corp.,* 984 F.2d 1305, 1310–11 (1st Cir.1993). The determination whether the *de facto* Trustee Doctrine applies is a question of law, reviewed *de novo,* while the bankruptcy court's application of the doctrine to the facts of the case is reviewed under an abuse of discretion standard. *In re Fracasso,* 222 B.R. 400 (1st Cir. BAP 1998), *aff'd,* 187 F.3d 621 (1st Cir.1999). Finally, the order overruling the Grandersons' Objection to the Bank's request to file a late opposition is reviewed under an abuse of discretion standard. *See Birch v. Choinski (In re Choinski),* 214 B.R. 515, 518 (1st Cir. BAP 1997), *aff'd,* 187 F.3d 621 (1st Cir.1998).

---

7. The Grandersons did not appeal the bankruptcy court order of April 21, 1999, allowing the Bank's late opposition to the Joint Motion.

8. With this ruling the Trustee's Motion to Dismiss is DENIED, as moot.

Regarding abuse of discretion, the First Circuit has stated: "Judicial discretion is necessarily broad—but it is not absolute. Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." *Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir.1988).

### (A) *11 U.S.C. § 322(a) and the De Facto Trustee Doctrine:*

■ The Grandersons argue, without supporting case law or citation to *any* authority, that the requirements of § 322(a) are jurisdictional and cannot be waived. We find no merit in this argument, either under the statute, or in the cases. To the contrary, in considering whether a trustee is qualified to act in a particular case, courts generally look to the *de facto* trustee doctrine. *See In re Holiday Isles, Ltd.*, 29 B.R. 827 (Bankr. S.D.Fla.1983) ("Courts faced with a trustee's failure to technically qualify have long recognized the concept of a '*de facto*' trustee in a bankruptcy estate"). If the requirements of § 322 were jurisdictional as suggested, and if the *de facto* trustee doctrine was not readily available, trustees would be regularly exposed to hyper-technical, but meritless litigation as we have here, and such a result would ignore years of common sense jurisprudence. *See In re Martinez*, 355 F.Supp. 650 (D.P.R.1972), *aff'd*, 502 F.2d 1158 (1st Cir.1973) ("The right of the trustee to act as such and to officially perform his duties can only be ended by a judicial declaration of vacancy"). In the absence of any authority or persuasive argument to the contrary, we are satisfied that the five day filing requirement in Section 322(a) is not jurisdictional. *See id.*

■ Given our ruling on jurisdiction, and since it is undisputed that Carpenter did not file her bond within the five day deadline in § 322(a), the question is whether the bankruptcy judge correctly applied the *de facto* trustee doctrine in this case, and we conclude, for the reasons given below, that she did. *See Varalli v. PTL Intermodal (In re Metro Shippers, Inc.)*, 95 B.R. 366, 370 n. 5 (Bankr.E.D.Pa.1989) ("Although 11 U.S.C. § 322 requires a trustee to post a bond in order to qualify as trustee, courts have long held that actions taken by a trustee prior to posting the bond are valid.")

The test for determining the applicability of the Doctrine is also well stated in the case of *Holiday Isles, Ltd.*, where the court held that a trustee who has not qualified statutorily will be treated as a *de facto* trustee if such person has, since being appointed trustee, "acted as trustee, ... held [him/herself] out to be trustee, and ... [has] been treated as trustee by the Court, creditors and employees of the estate, and all other interested parties." 29 B.R. at 830. *Holiday Isles* involved Chapter 11 co-trustees who failed to file a bond as required. On a creditor's motion to remove the co-trustees, the court held that although the co-trustees did not technically qualify as such, they were nonetheless trustees under the *de facto* trustee doctrine because they acted as trustees, held themselves out to be trustees, and were treated as trustees. *Id.*

Similarly, in the case of *In re Upright*, 1 B.R. 694 (Bankr.N.D.N.Y.1979), the debtor objected to a trustee's sale of property where the trustee did not file his bond until twelve days after his appointment, the court held that "such tardy filing did not per se render the [actions prior to filing] ineffective." *Id.* at 698. Later, the Court, quoting *Martinez* stated " '[E]ven though a trustee has not given bond within the term stated in Section 50(b) of the Act ... the trustee's acts are valid as having been carried out as a de facto trustee.' " *Upright*, 1 B.R. at 698 (*quoting In re Martinez*, 355 F.Supp. at 654). We think the reasoning in these cases is sound and that the results are correct.

Based on the undisputed facts in this case, and because the technical but very brief statutory miscue has prejudiced no one, we conclude that the bankruptcy judge did not abuse her discretion in applying the doctrine. Since her appointment as trustee, Carpenter acted as trustee and was treated as such by all concerned. She commenced two adversary proceedings against the Grandersons and was instrumental in converting the case to Chapter 7, where she is now the Chapter 7 trustee. During the last two years and throughout the life of this case Carpenter has filed pleadings, made court appearances, and was treated and recognized as trustee by the Court, creditors and even *the Appellants*,[9] who previously filed a motion to disqualify Carpenter on other grounds.

■ The Appellants also argue that for the doctrine to apply, the court first must find that specified innocent third parties "justifiably relied" on Carpenter's actions as trustee. As authority, they cite to the three cases we have discussed *infra* (*In re Upright, In re Holiday Isles,* and *In re Martinez*), but they at best misread, and more likely misrepresent the holdings of the decisions on which they rely. Not one of the cases cited by the Appellants holds that "justifiable reliance" by innocent third parties is integral to the application of the *de facto* doctrine and, in fact, none of the cases even *mention* "justifiable reliance" of innocent third parties in connection with the *de facto* trustee doctrine. In making such recklessly inaccurate and misleading arguments, the Appellants and their counsel are treading dangerously close to Rule 11 sanction territory, and they should treat this comment as fair warning regarding similar future transgressions.

Digging an even deeper hole for themselves, the Appellants cite to *Morse v. Fall River Line Pier, Inc.,* 345 Mass. 681, 189 N.E.2d 512 (1963), in support of their "justifiable reliance" argument, representing that *Morse* holds that "justifiable reliance" is a necessary element to the application of the *de facto* trustee doctrine.[10] Here again, the Appellants misstate the holding of the case, where the *de facto* doctrine was applied, not because of reliance by a third party, but because the corporation surreptitiously placed certain individuals in a position to act and appear as directors who held themselves out to be directors and acted as though they were directors. The reliance by the third party manager on the *de facto* directors' status as directors was reasonable, and the corporation was required to honor the employment contract. Although there was justifiable reliance by a third party in that case, its presence was not the basis for the result. In short, none of the cases cited by the Appellants stands for the proposition that "justifiable reliance" is a necessary element for the application of the *de facto* trustee doctrine. To the contrary, there could hardly be a clearer case for the application of the doctrine.[11]

(B) *The Grandersons' Objection to the Bank's Tardy Opposition:*

■ On April 21, 1999, nine days after the expiration of the objection deadline, the Bank filed a Motion to File a Late Opposition to the Joint Motion, arguing that it would be prejudiced by removal of

9. Indeed, at this late date and having acquiesced in Carpenter's tenure for two years, the Appellants only strengthen the *de facto* trustee theory. Estoppel and/or waiver are additional bars to the Joint Motion.

10. The case dealt with corporate directors who sought to avoid the employment contract of a manager on the ground that certain directors were not properly elected to the board. The Court upheld the contract because the directors, who were not properly elected, acted under the color of title as directors. This made them *de facto* directors of the corporation and bound the corporation by their actions.

11. The six day delay in this case clearly prejudiced no one, where as brief as it was the delay was not caused by the Trustee who acted expeditiously at all relevant times.

the Trustee and dismissal of the adversary proceedings. The Bank's motion was filed 6 days after the bankruptcy court heard oral argument on the Joint Motion to Remove, and nine days before the bankruptcy court entered its order denying the Joint Motion. The Appellants also complain that the bankruptcy court granted the motion to file late objection only one day after it was filed, thereby depriving them of the opportunity to object.[12]

In response to the Appellants' argument that "rules is rules, and that this Court must follow them," we refer them to Massachusetts Local Bankruptcy Rule 9013–1(e) which states:

> (e) The Court may act upon a motion *without a hearing* under appropriate circumstances, including the following:
>
> . . .
>
> (2) *prior to the expiration of any applicable objection period,* if the motion is:
>
> (A) a non-adversarial motion of a routine nature;
>
> (B) a motion to which all affected parties in interest have consented;
>
> (C) a motion that is without merit in light of the law and the established facts of the case; and
>
> (D) a motion that is opposed only by objections which are, given the law and the established facts of the case, without merit.

MLBR 9013–1(e) (emphasis added). Based upon subsections (A), (C), and (D) above, we conclude that the bankruptcy court had the authority to act as it did, and that the Appellants have failed to establish any abuse of discretion.

■ Even assuming arguendo that we agreed with the Grandersons and found that the bankruptcy judge abused her discretion in overruling their objection to the Bank's late opposition, such error would be harmless at best. In rendering her decision on the merits of the Joint Motion the bankruptcy judge did not even reference the Bank's opposition. Rather, she stated: "that the analysis of the law and arguments made by the Chapter 7 Trustee and the U.S. Trustee in their pleadings are persuasive and compel the denial of the Joint Motion." Bankruptcy Court Order dated April 30, 1999, p. 2.

## CONCLUSION

The Appellants' transparent efforts to remove the Trustee in order to permanently extinguish the two adversary proceedings pending against them is a misguided and ill-conceived attempt to avoid facing the merits of the complaints against them.[13] We agree with and affirm the bankruptcy judge's orders in all respects, especially where she (under)states that "the arguments made by the Debtor and his spouse border on frivolous." Accordingly, the Order dated April 30, 1999, denying the Joint Motion to Remove the Trustee, and the Order dated May 4, 1999, overruling the Grandersons' objection to the Bank's Motion to file a late opposition are AFFIRMED. Finally, the Appellants are forewarned that if they continue to present arguments as lacking in merit as those made to this Panel, they will likely face the imposition of sanctions. The Appellee is awarded her costs associated with this appeal.

---

12. The docket reveals that the bankruptcy judge granted the Bank's motion the same day it was filed.

13. Even if Carpenter were to be removed, a successor trustee would simply step into her shoes, and the litigation would proceed without interruption. *See Varalli,* 95 B.R. at 370, n. 5.